UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR T.,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No. 21-cv-09864-JST<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 15 & 16 |

Plaintiff Arthur T. seeks judicial review of the Social Security Administration Commissioner's ("Commissioner") denial of his application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). Before the Court are Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment. ECF Nos. 16, 20. The matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule 16-5. The Court will deny Plaintiff's motion and grant Defendant's motion.

## I.   BACKGROUND

Plaintiff was born on December 21, 1984, and lives in San Jose, California. *E.g.*, AR 173. Plaintiff served in the Navy from April 26, 2007 to October 28, 2018 and previously worked as an air traffic controller and personnel service worker. AR 36, 49, 173. Plaintiff completed high school and two years of college. AR 35. In 2014, Plaintiff incurred a traumatic brain injury ("TBI") in a car accident and has since been diagnosed with TBI, major depressive disorder, generalized anxiety disorder, and psoriasis. *E.g.*, AR 1260, 1484.

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on June 21, 2019, alleging an onset date of October 29, 2018. AR 173. An Administrative Law Judge ("ALJ") heard Plaintiff's case telephonically on July 27, 2021, AR 15,

1    and issued a decision denying Plaintiff's application on August 4, 2021, AR 24.  In reaching this

2    decision, the ALJ used the five-step sequential evaluation process for disability determinations

3    required by SSA regulations.  20 C.F.R. § 416.920(a)(1).  The ALJ found at the first step that

4    Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  AR 17; *see*

5    20 C.F.R. § 416.920(a)(4)(i).  At the second step, the ALJ found that Plaintiff had one severe

6    impairment: mild TBI with vestibular disorder.  AR 17; *see* 20 C.F.R. § 416.920(a)(4)(ii).  At the

7    third step, the ALJ found that Plaintiff did not have an impairment that meets or medically equals

8    the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1, so proceeded to

9    step four.  AR 19; *see* 20 C.F.R. § 416.920(a)(4)(iii).  At the fourth step, the ALJ determined that

10   Plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all

11   exertional levels, but can only occasionally climb ladders, ropes, or scaffolds; with no more than

12   occasional exposure to hazards; and no more than frequent exposure to wetness or humidity."  AR

13   20.  Based on this determination, the ALJ found that Plaintiff was able to perform his past work as

14   an air traffic controller and personnel service provider.  AR 22; *see* 20 C.F.R. § 416.920(a)(4)(iv).

15   The ALJ found in the alternative that, at step five, there were jobs that exist in significant numbers

16   in the national economy that Plaintiff could perform: assembler, marker, and routing clerk.  AR

17   23; *see* 20 C.F.R. § 416.920(a)(4)(v).

18        The Appeals Council denied Plaintiff's request for review on October 28, 2021.  AR 5.

19   Plaintiff timely filed this action seeking judicial review of the Commissioner's decision.  ECF

20   No. 1.

21   **II.   JURISDICTION**

22        The Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

23   U.S.C. § 405(g).

24   **III.  LEGAL STANDARD**

25        "The Court may set aside a denial of benefits only if not supported by substantial evidence

26   in the record or if it is based on legal error."  *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1084–

27   85 (9th Cir 2000).  Substantial evidence "means only . . . 'such relevant evidence as a reasonable

28   mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (quoting *Consolidated Edison Co v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "review[s] the administrative record in its entire[ty] to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." *Id.* at 1258. The ALJ is responsible for determinations of credibility, resolution of conflicts in medical testimony, and resolution of all other ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, courts "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). "'Even when the ALJ commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

## IV.   DISCUSSION

Plaintiff argues that the ALJ erred by concluding that Plaintiff's major depressive disorder and generalized anxiety disorder were non-severe at step two and by discrediting Plaintiff's subjective testimony as to the severity of these mental health conditions in assessing his RFC.

### A.   Severity at Step Two

"Step two is merely a threshold determination meant to screen out weak claims" and "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). A claimant's RFC "*should* be exactly the same regardless of whether certain impairments are considered 'severe,'" at step two. *Id.* (emphasis in original). When "all impairments were taken to account both times," "[a]ny alleged error is . . . harmless" because the claimant "could not possibly have been prejudiced." *Id.*; *see Rosemarie V. v. Kijakazi*, No. 21-cv-02192-AGT, 2022 WL 4099457, at *14 (N.D. Cal. Sept. 7, 2022) ("Any failure to classify an impairment as non-severe at step two is harmless if the

3

ALJ subsequently considered the limitations posed by the impairment at a later step in the inquiry." (collecting cases)).

Although the ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety do not cause more than minimal limitation in claimant's ability to perform basic mental work activities and [are] therefore nonsevere," the ALJ nonetheless considered these impairments in assessing Plaintiff's RFC. AR 18. The ALJ wrote, "Clinicians noted that claimant had essentially normal mental status exams except for depressed or anxious mood or affect at times." AR 21. This characterization is entirely consistent with the record evidence, including the evidence that Plaintiff cites in support of his argument. *See* ECF No. 15-1 at 14 (citing AR 417, 602, 609, 1262–63); *see also* AR 596, 616, 634, 640, 651–52, 674, 699, 711, 716, 732, 739–40, 749, 782, 790, 797, 802, 807, 813–14, 818–19, 826, 836, 843, 848–49, 861, 866, 875–876, 881, 886–87, 899–900, 907–08, 915–16, 927, 938–39, 945, 953, 959–60, 955–66, 971, 978–79, 987, 1014, 1018, 1200, 1203–05, 1208–09, 1213, 1218–19, 1255–56, 1272–73, 1325, 1333, 1338, 1343, 1348, 1352, 1357, 1362, 1386, 1394, 1411, 1422–23, 1436, 1440–41, 1480–81, 1487, 1495–96, 1500, 1505, 1510, 1514, 1519, 1524, 1548, 1556. Accordingly, even if the ALJ failed to properly assess the severity of Plaintiff's major depressive disorder and generalized anxiety disorder at step two, the ALJ's error was harmless because the ALJ accounted for those impairments in assessing Plaintiff's residual functional capacity.

### B.     Symptoms Testimony

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* at 1018

(quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Additionally, "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id*. at 1011. "[G]eneral findings are an insufficient basis to support an adverse credibility determination." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id*. The ALJ's credibility finding must be properly supported by the record and sufficiently specific to assure a reviewing court that the ALJ did not arbitrarily reject Plaintiff's subjective testimony regarding pain or other symptoms. *Bunnell*, 947 F.2d at 345–46.

Plaintiff testified that he had "[b]ad days" where he would "just wake up, be depressed" and "irritated," and did not have the "motivation to do anything." AR 56. He further testified that his family helps him take care of his children, AR 57, that he tries "to avoid going out" because he "gets paranoid," AR 58, that he has "more bad days than good days," AR 60, that medication "keeps [his depression and anxiety] under control," *id.*, and that he gets "irritated," "fatigued," and "restless" five out of seven days of the week. AR 61.

The ALJ concluded that Plaintiff's depression and anxiety could reasonably be expected to cause the symptoms to which Plaintiff testified, but that his testimony was inconsistent with the medical evidence and other record in the evidence. AR 21. The ALJ first found evidence of malingering, citing a neuropsychological evaluation in which a neuropsychologist concluded that Plaintiff's performance on a psychometric test "revealed that he may have exaggerated existing symptoms" of depression and anxiety. AR 21; *see* AR 1261. The ALJ then relied on the medical opinions of four state agency consultants who characterized the evidence cited above in a manner similar to the ALJ. *See* AR 21, 65–77, 78–91. The ALJ further discussed Plaintiff's activities as illustrated in his progress notes and a third-party function report submitted by Plaintiff's spouse. AR 22. Relying on the progress notes and consistent with those notes, the ALJ wrote that Plaintiff "started exercising" and "weight training with cardio" in February 2019 and that Plaintiff "went to the Philippines from May 8 to June 10" in 2019. AR 22; *see* AR 1211, 1279; *see also* AR 921 (noting that, as of June 6, 2017, Plaintiff "engages in 150 minutes of moderate intensity exercise

per week AND muscle strengthening activities 2 or more days per week."); AR 1254 (noting that, on March 19, 2019, Plaintiff "reported being more active in personal exercise and is completing projects around his home he wanted to complete for a long time."). Relying on the function report and consistent with the report, the ALJ wrote that Plaintiff "drove, did laundry, washed dishes, cleaned the house, rode a bicycle, went shopping in stores, watched TV and played computer games." AR 21; *see* AR 245–52. In the report, Plaintiff's spouse further indicated that he shops once a week for "food, kids['] needs, and car parts," AR2 48, that he goes outside every day, *id.*, and that he spends two to five hours per day taking care of his children, AR 245.

The ALJ did not commit legal error in assessing the severity of Plaintiff's anxiety and depression for two independent reasons. First, the ALJ "did identify evidence of malingering in the record, which is sufficient" to discredit Plaintiff's subjective testimony. *Austin v. Astrue*, No. C-12-3349 EMC, 2013 WL 1942141, at *3 (N.D. Cal. May 9, 2013). Second, even if there were not evidence of malingering, the ALJ cited the evidence of Plaintiff's activities from the progress notes and third-party function report, accurately characterized that evidence, and thus provided clear and convincing reasons for discrediting Plaintiff's testimony. *Cf. Normalya T. v. Kijakazi*, No. 22-cv-02691-JST, 2023 WL 4109574, at *3 (N.D. Cal. June 20, 2023) ("An ALJ necessarily fails to provide clear and convincing reasons for rejecting a claimant's testimony when those reasons rest on mischaracterizations of the record." (collecting cases)).

Plaintiff does not address the first conclusion but challenges the second, citing evidence from his own function report in which he wrote that he goes outside "only as needed" to attend medical appointments and to transport his children to and from school. AR 239. But that function report is inconsistent with the third-party function report in this respect and likely constitutes further evidence of malingering. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008) (noting that there need only be "affirmative evidence suggesting . . . malingering" for an ALJ to have validly discredited a claimant's subjective testimony (quoting *Smolen*, 80 F.3d at 1283–84)). Plaintiff further cites portions of the third-party function report in which his spouse wrote that Plaintiff "isolate[s] himself" when stressed and "gets irritated fast and doesn't want to do things." AR 249. However, his spouse also wrote that Plaintiff "gets along well" with authority

figures, is "good on communication," AR 251, is "totally fine" with changes in routine with reminders, *id.*, and "can . . . follow[] written instruction[s]" well, AR 250. While the report is thus mixed as to its depiction of Plaintiff's ability to function in a workplace, the ALJ did not err in concluding that Plaintiff's activities were nonetheless inconsistent with the limitations to which he testified. *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: August 10, 2023

_____
JON S. TIGAR
United States District Judge